**UNITED STATES of America,**
**Appellee,**

v.

**George POLLACK, Defendant-Appellant.**

**No. 83–4467.**

United States Court of Appeals,
Fifth Circuit.

Aug. 2, 1984.

---

George Pollack, pro se, and David Litman, Dallas, Tex. (Court-appointed), for defendant-appellant.

Joseph S. Cage, Jr., U.S. Atty., Dosite H. Perkins, Jr., Asst. U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before TIMBERS,[*] POLITZ and RANDALL, Circuit Judges.

TIMBERS, Circuit Judge:

George Pollack appeals from a judgment of conviction entered May 25, 1983 in the Western District of Louisiana, John M. Shaw, *District Judge*, after a trial before a jury which convicted him of transporting forged checks in interstate commerce and of conspiring to do so. He was sentenced to a net term of four years in prison. He is now serving that sentence.

The sole questions raised on appeal are the legality of the warrantless arrest of Pollack on October 27, 1982, the correctness of the denial of Pollack's motion to suppress the evidence seized incidental to the arrest, and the propriety of admitting such evidence at trial.

Since we conclude that the arresting officer had probable cause to believe that Pollack had committed a crime, we hold that the arrest was legal, that the denial of the motion to suppress the evidence seized incidental to the arrest was correct, and that such evidence was properly admitted at trial. We affirm.

[*] Of the Second Circuit, sitting by designation.

## I.

We shall summarize those facts and prior proceedings believed necessary to an understanding of our rulings on the issues raised on appeal.

On October 27, 1982, a man using the alias "George Palmer" opened a savings account with a small cash deposit at the downtown branch of Union Federal Savings and Loan in Lafayette, Louisiana (Union Federal). Approximately three hours later, this man returned and deposited an out-of-state check in amount of $4,900 drawn on the account of Edwin Desreau and payable to G. Palmer. The check was very worn. The September date had been scratched out and changed to read October. "Palmer" asked how long a hold would be placed on the check and when he would be permitted to withdraw funds from the account. A number of factors, including the appearance of "Palmer", his address, and the fact that the account had been opened earlier that morning, made the bank employee suspicious. A Union Federal official telephoned the drawee bank, American Savings and Loan Association of Florida (American Savings). She was told that Desreau's account had been closed on February 18, 1982, and that since that date approximately $600,000 in checks had been drawn on the closed account made payable to "G. Palmer" and had been presented for payment.

The Union Federal official closed the "Palmer" account immediately. She contacted FBI Special Agent George Blount. Officials at both Union Federal and American Savings told Agent Blount that there was an outstanding arrest warrant for Edwin Desreau charging him with forgery. Desreau was the drawer of the check on the closed account at American Savings. Officers in the Dade County Sheriff's Office confirmed this fact. They gave a description of Desreau to Blount who recalls that the description was of a white male approximately fifty years old, 5'8, 5'9, "sort

of stocky", "short, medium build". The Union Federal employee gave a similar description of the person claiming to be "Palmer" and added that he wore glasses, had a receding hairline, and was wearing a dark blue or black coat, a light colored shirt, and blue jeans. When opening his account, "Palmer" had given the street address of an inexpensive downtown motel as his residence. Agent Blount went there and spoke with the desk clerk. A George Pollock was registered there. The desk clerk confirmed the description given by the Union Federal employee and verified the clothes Pollock ("Palmer") was wearing. The desk clerk said that Pollock had left about an hour ago. He was walking.

While Agent Blount was on his way to other financial institutions to continue his investigation, he noticed a man on the street who matched the "Palmer" description. After another agent joined him, Agent Blount approached the man. He asked him if he was Palmer, Pollock or Desreau. The suspect initially said that his name was Palmer but later refused to give any name, saying that the FBI would have to figure it out. The suspect in fact was appellant George Pollack. Agent Blount, however, did not discover this until later. He believed the suspect to be Edwin Desreau at the time of the arrest.

Agent Blount performed a pat-down search at the time he arrested Pollack on the street. Three to five minutes were required to transport Pollack to Agent Blount's office where a thorough search of his person was made. This search disclosed incriminating evidence, including the Union Federal passbook, records of a checking account opened at Southwest National Bank in Lafayette, Louisiana (Southwest National) which showed a deposit of $5,100, and handwritten notes connecting Pollack to Desreau. Some of this evidence was later used against him at trial. The government concedes that this evidence was crucial for trial.[1]

1. Pollack's transactions at Southwest National were the basis of the charges for which he was indicted, tried and convicted.

Within a half hour of his arrest, Pollack signed a consent to search form, which permitted officers to search his motel room. This search disclosed further incriminating evidence.

Desreau subsequently was arrested. Evidence substantiating that Pollack and Desreau were co-conspirators was uncovered. They were tried separately, however.

Pollack was charged with the offenses stated above, namely, violations of 18 U.S.C. §§ 2, 2314 (1982)[2] and 18 U.S.C. § 371 (1982). A suppression hearing was held before Magistrate William L. Goode on March 17, 1983. Judge Shaw, after reviewing the transcript of this hearing, denied the motion to suppress. He held that Agent Blount justifiably had mistaken Pollack for Desreau, for whom there was a valid, outstanding arrest warrant. Some of the evidence seized from Pollack incidental to his arrest was introduced at trial by the government over the objection of defense counsel. After a three day jury trial, Pollack was convicted on all counts on May 25, 1983.

## II.

Appellant argues that his warrantless arrest was illegal, and that the material seized during the search incidental to his arrest, as well as during the search of his motel room, should have been suppressed. We disagree.

■ A warrantless arrest is valid if there is probable cause to believe that an offense has been committed and that the person arrested has committed the offense. *Carroll v. United States*, 267 U.S. 132, 162 (1925). Pollack disputes both prongs of the *Carroll* holding, as applied to him. He claims that at the time of his arrest Agent Blount had an insufficiently specific description to enable him to identify Pol-

lack as the person using the Palmer alias, and that Blount had insufficient information to warrant a belief that any crime had been committed. We shall consider both claims, as well as an alternative ground for sustaining the arrest. First, was the physical description of the suspect given to Agent Blount sufficiently specific to justify his identification of Pollack as the man who opened the account at Union Federal? Second, did Agent Blount have sufficient information concerning the events at Union Federal to justify a belief that a federal or state crime had occurred? Or, third, in the alternative, was Blount justified in arresting Pollack pursuant to the warrant for Desreau?

■ We turn first to the adequacy of the physical description. Agent Blount was looking for a white male, approximately 50 years old, 5'8 or 5'9, with a short, stocky, medium build, glasses, and a receding hairline, wearing a dark blue or black coat, a light colored shirt, and blue jeans. Some features of this description are more distinctive than others. The composite, however, presents a fairly good picture of the suspect's appearance. We hold that this description was adequate. The sufficiency of a particular description is largely a factual matter. What is a distinctive appearance or manner of dressing in one location may be commonplace in another. We decline to second-guess the arresting agent, a magistrate, and the district court with respect to the sufficiency of the description. Furthermore, in this case Agent Blount received the description of "Palmer" directly from the bank employee and the motel clerk; he did not receive the description second hand over the police radio or in some other fashion. In view of Agent Blount's success in locating Pollack, we are particularly loath to hold that the agent did not have a proper description. This case

---

**2.** 18 U.S.C. § 2314 in relevant part provides:

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities ... knowing the same to have been falsely made, forged, altered, or counterfeited;

. . .

Shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

A check may be falsely made if it is not genuine because a false or fictitious name was used. *United States v. Hagerty*, 561 F.2d 1197, 1199 (5th Cir.1977).

does not involve the much more frequent fact pattern where many people were stopped and questioned, or where the individual stopped in fact was the wrong person but was held on the basis of contraband disclosed during the resulting search. E.g., *United States v. Short*, 570 F.2d 1051, 1054 (D.C.Cir.1978). Here the agent correctly identified the suspect on the basis of the description. Clearly there is a presumption that the description was adequate when it produced a correct result. It is hard to argue with success.[3]

■ Having held that the district court correctly found that the physical description was sufficient to justify Agent Blount's belief that Pollack was the man who passed the check, we turn to a consideration of the crime for which Pollack was arrested. At the suppression hearing, Agent Blount testified that he arrested Pollack because of his belief that he had arrested Desreau (for whom an arrest warrant had been issued) and also because of his belief that the suspect had committed the state crime of "theft by check" in view of his attempt to pass a bad check at the Union Federal. He did not arrest Pollack because of any federal crime with respect to the $4900 check at the Union Federal because he mistakenly believed that $5000 was a requisite jurisdictional amount.[4] There is no doubt as to Agent Blount's authority to arrest when he knew that a state offense had been committed. Even if, arguendo, there were any such doubt, this arrest still would be valid. If, as in the instant case, the arresting officer knows facts which constitute probable cause to believe that the suspect has committed a federal crime, it is not required that the officer subjectively believe that probable cause exists to arrest for that crime. *United States v. Gray*, 659 F.2d 1296, 1300–01 (5th Cir.1981). Thus, Agent Blount's mistaken belief regarding a $5000 jurisdictional requirement is not fatal.

Finally, even if the sole justification for Agent Blount's arrest of Pollack was his mistaken belief that he had arrested Desreau, we would not conclude that the arrest was illegal, for the misidentification was not unreasonable. The detained man declined to identify himself as Pollack. The verbal description of Desreau given by the Dade County Sheriff's Office was wholly consistent with the more detailed descriptions of "Palmer" given by the bank employee and by the motel desk clerk. They fitted the detainee. Perhaps the most incriminating connection was the possession by "Palmer" of the check drawn on Desreau's closed account. We agree with the district court that the mistaken belief that Pollack was Desreau was justifiable, and that it was proper for Agent Blount to place Pollack under arrest and to conduct a search incidental thereto.

It follows of course that the motion to suppress was correctly denied and that there was no error in admitting at the trial the material seized during the searches.

Affirmed.

---

3. Blount felt so sure of the identification that he considered it a "detaining situation" even before he approached the suspect. This case did not involve a mere "hunch" or "suspicion".

4. In fact, the only requirement under 18 U.S.C. § 2314 is that the falsely made security be transported in interstate commerce. There is no jurisdictional amount specified.