**Will H. WOODS, Plaintiff,**

v.

**Detective A.T. LEMONDS, The City of Cape Girardeau, Missouri, Defendants.**

**No. S91 0090 C.**

United States District Court, E.D. Missouri, Southeastern Division.

Sept. 28, 1992.

Michael D. Murphy, Schnapp & Graham, Fredericktown, Mo., for plaintiff.

A.M. Spradling, III, Spradling and Spradling, Cape Girardeau, Mo., for defendants.

## MEMORANDUM

LIMBAUGH, District Judge.

This matter is before the Court upon defendants' motion for summary judgment and plaintiff's cross-motion for partial summary judgment on the issue of liability only. Plaintiff brings suit alleging various constitutional violations by defendant A.T. Lemonds, a detective for the Cape Girardeau Police Department. Plaintiff seeks injunctive and monetary relief pursuant to 42 U.S.C. § 1983.

### I. Standard for Summary Judgment

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop., Inc.*, 838 F.2d 268, 273 (8th Cir.1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 488, 7 L.Ed.2d 458 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the non-moving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct.

1348, 1355, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir.1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to an examination of the facts.

## II. Facts

On July 7, 1989 a burglary took place at 701 North Street in Cape Girardeau, Missouri. As a result of the burglary, the perpetrator received some wounds which bled. Blood was obtained on the premises which was not the blood of the victim, but apparently the blood of the assailant. The burglary occurred in the early morning hours and was committed by a black man who was of slight build, approximately 5'4" to 5'9". On July 2, 1989, a similar burglary took place 801 North Street in the early morning hours by a similarly described individual.

On August 10, 1989, the Cape Girardeau Police Department arrested plaintiff in the early morning hours at 801 North Street for attempted burglary. The plaintiff is a black male weighing 160 pounds and is 5'6" tall. As a result of plaintiff's altercation with the Cape Girardeau Police during his arrest, plaintiff apparently sustained some cuts and scratches which caused the plaintiff to bleed onto his orange jail uniform. The defendant, A.T. Lemonds observed plaintiff at the police station at the time plaintiff was being arrested and booked and noted the blood on the jail uniform. Defendant requested that plaintiff remove his jail uniform top, gave plaintiff a new top, and took the one seized to the Southeast Missouri Regional Crime Laboratory for blood analysis.

The lab results indicated that the blood found at the July 7, 1989 crime scene and plaintiff's blood were very similar. The likelihood that the blood samples were not from the same individual was approximately 0.00019% (1/5100). Defendant applied for and obtained a search warrant for the taking of whole blood from plaintiff on September 20, 1989. The issuance of the search warrant was based upon an affidavit signed by defendant. Detective Lemonds then proceeded to execute the warrant by reading and giving a copy of it to the plaintiff at the Cape Girardeau County Jail. Plaintiff requested his attorney. The plaintiff was then transported to St. Francis Medical Center in Cape Girardeau by two Cape Girardeau County Sheriff's deputies, Lt. Proffer and Deputy Noah. At the hospital, Woods again requested to consult with his attorney. Woods stated that he would not consent to the taking of his blood until he had the opportunity to consult with counsel. Plaintiff was then put on a cot by defendant and officers Noah and Proffer and a body cavity net was placed over him while the blood was removed from him.

In March of 1991, the criminal case against plaintiff for the July 7, 1989 burglary was *nolle prossed*. Woods then filed his complaint in this action in July, 1991. Later that month, the criminal case against plaintiff was reopened. In May of 1992, plaintiff was acquitted by a jury for the July 7, 1989 burglary.

Plaintiff's complaint seeks damages for violations of his constitutional rights, including the First Amendment right to petition for redress of grievances, the Sixth Amendment right to counsel, and the Fourth Amendments guarantee of freedom from unreasonable searches and seizures, among others, pursuant to 42 U.S.C. § 1983. It also includes a pendant state law claim for battery.

## III. Discussion

### A. Right to Petition/Access to the Courts

Plaintiff alleges that defendants orchestrated the re-filing of the criminal case against him after it initially was nolle prossed in early 1991. Plaintiff maintains that the criminal case was re-filed in direct retaliation for plaintiff's filing of this 1983 action.

■■■■ The right of access to the courts can be infringed and thus made actionable under § 1983. *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977). Similarly, the First Amendment similarly protects the freedom to petition the government for redress of grievances. *Hague v. CIO*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). Reckless or intentional indifference to the plaintiff's constitutional rights is required in such actions. *Germany v. Vance*, 868 F.2d 9, 14–15, 17 (1st Cir.1989).

■■ Plaintiff has presented no evidence indicating that defendants were intentionally or recklessly indifferent to plaintiff's constitutional rights to petition the government for redress of grievances or access to the courts. In plaintiff's affidavit, he states that he cannot prove the motive for re-filing the criminal case. In addition, the Prosecuting Attorney of Cape Girardeau County was the person who refiled the charges against plaintiff, not defendants. Thus, plaintiff has failed to show any genuine issue of material fact and has failed to show defendants' were recklessly or intentionally indifferent as to plaintiff's right to access/petition claim. Defendant is therefore entitled to summary judgment as a matter of law as to this claim.

### B. Right to Counsel

■■ Plaintiff also alleges a violation of his Sixth Amendment right to counsel, based on defendant's denial, despite repeated requests, of the opportunity to consult with his attorney before the taking of his blood. Defendant Lemonds knew, at the time, that Woods was represented by counsel. Neither party disagrees that plaintiff requested to consult with his attorney prior to the taking of the blood. Thus, there is no genuine issue of material fact present as to this claim.

The leading Supreme Court decision dealing with the constitutional rights associated with the taking of blood is *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). In *Schmerber*, the United States Supreme Court held that even though plaintiff was compelled to submit to a blood test in spite of his objection, which was based upon the advice of counsel, there was no Sixth Amendment right to counsel violation. The court noted that since there was no privilege against self-incrimination associated with the taking of blood, counsel's erroneous advise that the privilege could be asserted would not give any greater right to it.

In addition, the Missouri Court of Appeals held in *State v. Setter*, 721 S.W.2d 11, 17 (Mo.Ct.App.1986) (which is cited by plaintiff) that "an arrested person does not have a constitutional right to consult with an attorney prior to deciding whether or not to submit to a breathalyzer test and does not have a constitutional . . . right to have an attorney present at such test nor to condition his consent to take the test on an attorney being present."

Thus, it is the opinion of this court that defendant is entitled to summary judgment as a matter of law on plaintiff's right to counsel claim because plaintiff had no constitutional right to have his attorney present or consult with his attorney prior to his giving consent to the blood sample.

### C. Fourth Amendment

■■ Plaintiff argues that there was no probable cause for the issuance of the search warrant to seize his blood, thus violating the Fourth Amendment's protection from unreasonable searches and seizures. The United States Court of Appeals for the Eighth Circuit has found the existence of probable cause "when the affidavit sets forth sufficient facts that would lead a prudent person to believe that 'there is a fair probability that . . . evidence of a crime

will be found in a particular place.' " *U.S. v. Gibson*, 928 F.2d 250, 253 (8th Cir.1991).

Defendant claims he is immune from any liability in this case under the doctrine of qualified immunity. The doctrine of qualified immunity for a police officer who obtains a search warrant was established in *Malley v. Briggs*, 475 U.S. 335, 343–44, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986). *See also Myers v. Morris*, 810 F.2d 1437, 1455 (8th Cir.1987), *cert. denied*, 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987). In *Malley*, the United States Supreme Court determined that a standard of objective reasonableness defines the qualified immunity accorded an officer whose request for a search warrant allegedly caused an unconstitutional search. *Id.* 475 U.S. at 344, 106 S.Ct. at 1097. "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable ... will the shield of immunity be lost." *Id.* at 344–45, 106 S.Ct. at 1098.

Additionally, in *Myers*, the United States Court of Appeals for the Eighth Circuit used the *Malley* standard to determine whether the United States District Court for the District of Minnesota erred in denying the defendants' motions for summary judgment based upon qualified immunity. The Court of Appeals rejected plaintiffs' argument that the cases should be remanded for trial on the merits concerning whether probable cause existed in fact for arrests made by the defendants based upon complaints sworn out by the defendants. *Myers*, 810 F.2d at 1456–57. The Court noted that the "issue for immunity purposes is not probable cause in fact but 'arguable' probable cause." *Id.* at 1455. The proper inquiry for the Court, therefore, was to review the information before the defendants when they swore out criminal complaints and performed arrests to determine whether no reasonably competent officer would have sought arrests on the basis of the known facts and circumstances. *Id.*

Similarly, it is up to this Court to determine whether the warrant application sworn out by defendant Lemonds is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. Defendant applied for a search warrant based upon the results of a blood sample indicating that there was only an approximate 0.00019% likelihood that the blood samples were from two different individuals. In addition, defendant was aware of two prior burglaries, both within one block of the burglary plaintiff was charged with, occurring at the same time as the one plaintiff was charged with.

Plaintiff argues that defendant stated at plaintiff's preliminary hearing that defendant based his reasons for suspecting plaintiff upon "mere suspicion" or upon "a feeling that it was possible." Both of these statements are taken out of the context of the questioning and defendant's answers. In addition, in *United States v. Day*, 455 F.2d 454, 456 (3d Cir.1972), the Court of Appeals stated that it "would not consider [itself] bound by a police officer's inability to articulate his conclusions if the facts clearly demonstrate the existence of probable cause." *See also United States v. Pollack*, 739 F.2d 187, 191 (5th Cir.1984).

Thus, it is the opinion of this Court, that the warrant application sworn out by defendant Lemonds was not so lacking in indicia of probable cause as to render official belief in its existence unreasonable and defendant is therefore entitled to summary judgment as a matter of law.

For the foregoing reasons, defendants' motion for summary judgment shall be granted and plaintiff's motion for partial summary judgment will be denied.

Based upon 28 U.S.C. § 1367(c)(3), this court declines to exercise supplemental jurisdiction as to plaintiff's state claim of battery because defendant shall be granted summary judgment as to all of plaintiff's claims that this Court has original jurisdiction over.